CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED
2019 FEB 12 AM 9: 38
DEPUTY CLERK_____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| DEVAN JALBERT,<br>Institutional ID No. 02033605,<br>SID No. 50300649,<br><br>Plaintiff,<br><br>v.<br><br>JULIO ESPINOSA, III, *et al.*,<br><br>Defendants. | CIVIL ACTION NO. 5:18-CV-174-BQ |

## **REPORT AND RECOMMENDATION AND ORDER OF TRANSFER**

This case was transferred to the magistrate judge by order dated July 30, 2018. ECF No. 7. In accordance with said order, the undersigned conducted preliminary screening as described in 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and determined that Jalbert's claim against Texas Department of Criminal Justice (TDCJ) Correctional Officers (COs) Julio Espinosa, Joseph Valdez, and Randall Davis[1] for excessive use of force in violation of the Eighth Amendment survives preliminary screening. ECF Nos. 14, 24. Consequently, the court entered orders requiring Defendants to answer or otherwise plead to Plaintiff's claims. ECF Nos. 14, 24. Defendants filed their answers on December 10, 2018, and February 8, 2019. ECF Nos. 18, 26.

---

[1] The court entered an Order for Service directing Defendants, including "Benny Davis"—the defendant Jalbert originally named in his Complaint—to answer or otherwise plead to Jalbert's claims. ECF No. 14. In that order, the court noted that the authenticated records show that an Officer Randall Davis—not Benny Davis—was involved in the alleged incident at issue. *Id.* The court further noted that at the evidentiary hearing, Jalbert stated he only knew the officer involved by his last name, but believed Benny and Randall to be the same person. *Id.* On December 10, 2018, however, the Office of the Attorney General for the State of Texas (OAG), as *amicus curiae*, notified the court that the OAG could not answer on behalf of Benny Davis because "Benny Davis and Randall Davis were two different correctional officers at the John Montford Unit, both employed by the Texas Department of Criminal Justice on or around the date of the alleged incident." ECF No. 17.

Accordingly, the court entered an order on December 11, 2018, requiring Jalbert, within thirty days, to provide the court with specific identifying characteristics and information about the officer he identified as "Benny Davis" and sought to name as a Defendant in this action. ECF No. 19. Based on Jalbert's December 26, 2018, response (ECF No. 23), the court entered an order requiring Randall Davis to answer or otherwise plead. ECF No. 24.

1

As of today's date, all parties have not consented to jurisdiction by the magistrate judge. Upon review of Defendants' Answers, it is the opinion of the undersigned that this matter must be transferred to the district judge for further proceedings.

## I.     Discussion

The undersigned previously found that Jalbert's claim for excessive force survives preliminary screening. *See* Order For Service, at 1–2 (ECF No. 14); Order For Service, at 1–2 (ECF No. 24). Jalbert's use of force claim arises under the Eighth Amendment. To establish a constitutional violation for excessive use of force by a prison official, a plaintiff must show that the defendant unnecessarily and wantonly inflicted pain. *See Whitley v. Albers*, 475 U.S. 312, 319–21 (1986). Whether an official's use of force is unnecessary or wanton depends on if the "force was applied in a good-faith effort to maintain or restore discipline or maliciously or sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley*, 475 U.S. at 320). In *Hudson*, the Supreme Court emphasized that a plaintiff must establish both a subjective and objective component. Specifically, a plaintiff must demonstrate that (1) an official acted with a "sufficiently culpable state of mind" and (2) the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* at 8 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991)). Factors relevant to this determination include, but are not limited to, the following: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officers; and (5) any efforts officers made to temper the severity of a forceful response. *See id.* at 7; *Baldwin v. Stadler*, 137 F.3d 836, 838 (5th Cir. 1998) (citing *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992)).

Here, Jalbert alleges that on June 4, 2018, TDCJ John Montford Unit COs Davis, Espinosa, and Valdez used excessive force against him. Compl., at 4. At the evidentiary hearing, Jalbert conceded that he "jacked the food slot" in attempt to get a ranking officer's attention;[2] however, despite such conduct, Jalbert contends that Defendants' subsequent actions violated his constitutional rights. Specifically, Jalbert alleges that after CO Davis refused to let him speak with Sergeant Beasley regarding transfer to his assigned pod, Jalbert stuck his arms through the food slot. Jalbert asserts that CO Davis directed him to remove his arms or Davis would "arm wrestle" him for it. Jalbert admits that he again refused to give-up the slot, at which time CO Davis left the area and returned with COs Espinosa and Valdez. Jalbert acknowledges that the officers attempted, for approximately five minutes, to talk him into removing his arms, but Jalbert stated, "No. Call Sergeant Beasley. I'm not going to listen to y'all, because y'all lied to me before." *Spears* Hearing Tr. 11:2–6, 11:12–12:14 (ECF No. 22). Jalbert alleges that the officers "counted to three," and then CO Davis "grabbed [his] arm, twisted it, punching [him] in the arm, jerking [his] arm on the food slot where it- -the food slot started cutting on [his] arm." Tr. 11:7–9, 13:18–20. Jalbert alleges that CO Davis primarily used force against him, but COs Espinosa and Valdez also "participate[d]." Tr. 13:3–7.

Other than verbally admonishing him to remove his arms from the food slot, Jalbert contends that the officers did nothing to temper their use of force, e.g., they did not initiate an incident command system, call a higher ranking officer, or use chemical agents to regain compliance. *See* Tr. 13:10–15:5. Jalbert further avers that the officers did not report the incident

---

[2] Jalbert asserts after a suicide attempt, officials placed him on a twenty-four hour observation period in the Alpha-1 pod. At the time of the incident, Jalbert alleges that he had completed the twenty-four hour period and was awaiting transfer to his assigned pod, Bravo-2. Jalbert explained that he wanted to speak with Sergeant Beasley regarding the transfer, but CO Davis refused.

3

after it occurred,[3] and TDCJ officials did not become aware of the alleged incident until the next day, on June 5, 2018, when Jalbert reported it to the on-duty lieutenant.[4] Finally, Jalbert claims that Defendants used such force because he is currently incarcerated for committing a sex crime. Tr. 21:2–22:12.

Jalbert asserts that as a result of the alleged incident, he suffered cuts on his arms—which TDCJ medical personnel treated using "Steri-Strips," a type of wound-closure tape—a swollen right elbow, and bruising. He also stated, and the authenticated medical records confirm, that a nurse prescribed ibuprofen for his elbow pain. Tr. 17:13–15.

At this stage of the proceedings, Jalbert's allegations, taken as true, state a claim sufficient to survive preliminary screening, i.e., an excessive force claim under the Eighth Amendment against Defendants Davis, Espinosa, and Valdez. *See, e.g.*, *Hudson v. McAnear*, C.A. No. C–09–327, 2011 WL 67199, at *9–10 (S.D. Tex. Jan. 10, 2011) (denying summary judgment in favor of prison guard on prisoner's excessive force claim in part because evidence did not resolve "whether the *degree* of force was appropriate under the circumstances" or if the defendant applied the force "with malicious or sadistic intent" (emphasis in original)); *Brown v. Larty*, Civil Action No. 6:09cv69, 2010 WL 4736917, at *4–5 (E.D. Tex. Nov. 16, 2010) (explaining that despite prisoner's failure to obey orders, fact issue remained with respect to whether the amount or type of force defendant used was proportional to the need, thus precluding summary judgment in favor of defendant).

Given the timeframe set forth by the district judge in the referral order, it appears prudent to transfer the case back to the district judge for implementation of a scheduling order.

---

[3] The authenticated records seem to support this allegation.

[4] At the hearing, Jalbert explained that he did not report the incident until the next day because CO Davis was on-shift until that time.

Accordingly, it is the **RECOMMENDATION** of the magistrate judge that a scheduling order should be entered, setting dates certain for pretrial deadlines and filing dispositive motions.

It is therefore **ORDERED** that the transfer of this case to the United States Magistrate Judge is terminated and the case is hereby transferred back to the docket of the United States District Judge. This case shall hereinafter be designated as Civil Action Number 5:18-CV-174-C.

## II.   Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: February 12, 2019

                                                                                       D. GORDON BRYANT, JR.
                                                                                       UNITED STATES MAGISTRATE JUDGE